Case No. 18 at 1150 NL, Temple University Hospital, Inc. Petition v. National Labor Relations Board Ms. Farmer for the petition, Ms. Bisbell for responding, and Mr. Walters for the intervener Ms. Farmer for the petition, Ms. Bisbell for responding, and Mr. Walters for the intervener Ms. Farmer for the petition, Ms. Bisbell for responding, and Mr. Walters for the intervener across a number of bargaining units. In 1995, Temple created Temple University Health System as a wholly owned subsidiary over which it retains control. That is the situation as it exists today as well. In 2015, the union here, PASNAP, who is the intervener, tried to append more than four decades of stable labor relations by filing a petition with to add those employees to the existing bargaining unit under the procedures of PARA. The union refused because this has never been about the representation of those employees. Instead, and this was made clear in an email that was sent from the then executive director of PASNAP to the head of labor relations for the health system, and the parties have stipulated, the parties meaning the parties below the union and Temple Health System, the Temple Health Hospital, for labor relations purposes, are indistinguishable. They've been treated interchangeably by the PLRB and the parties. But the union says that it wanted to avoid what it expected to be the Supreme Court's decision in Friedrichs, which ultimately became the Supreme Court's decision in Janus, preventing the mandatory deduction of agency fees. So this is not about Temple Health System trying to thwart union representation. This is 3,500 unionized employees again throw across what is now 12 bargaining units at the health system who are represented and there is no question about that. I want to address today, if I can, two of the four issues which are actually raised in our brief because there will clearly not be time to address all four. I'm going to focus on the judicial estoppel and the issue of the exercise of discretion. To the extent that the court has questions on the others, I'm happy to take them, but otherwise we'd rest on our briefs given the time. So first I want to talk about judicial estoppel. I know that that is an unusual situation that brings us here today, but our position is that PASNAP was barred from bringing the underlying petition because of its persistent statements to the PLRB, which began many years before, and up through and including while this proceeding was going on in front of the NLRB, bringing itself under the jurisdiction of the PLRB. Does judicial estoppel apply to the board? We're not talking about us stopping the board here. We're talking about us stopping PASNAP from bringing the petition. It's never, the union, I'll call it the union, okay, has never made a contrary statement to this court. It has not. So why does judicial estoppel apply here at all? Judicial estoppel applies here because the same forum shopping that underlies the judicial estoppel applies equally to it making statements to the state board and to the federal board at the same time that are contradictory. And all of the reasons and the public policy reasons for judicial estoppel equally exist. And while the NLRB has said- Has the board ever ruled that? Has the board itself subjected itself to the judicial rules of judicial estoppel? So the case that is cited by the union, this Field Bridge case, which said the board does not follow judicial estoppel, was in fact not a judicial estoppel case, it was a collateral estoppel case. And the board has not found that. But in the We Transport case, which is cited in our brief, the board says that it did not want to encourage forum shopping by permitting parties to initiate a like proceeding before the NLRB after instituting one with a state agency. So while they didn't say that we will apply judicial estoppel, in fact the board has recognized that it has the authority to do so and in that case there was a petition pending in front of the state agency for representation, there were proceedings going on related to challenge ballots, and then the union went and filed a petition in front of the NLRB which the NLRB dismissed. It did it on another ground, the one-year bar, but it notes that it would not want to allow the petition to go forward because of the forum shopping issue and that we believe that that is consistent with a judicial estoppel approach. And here, this is not just about, you know, a statement in a brief in 2006 where this very issue was raised that whether the NLRB would exercise jurisdiction over Temple Health System after it was spun off from Temple University, and by spun off I meant it was created as a wholly owned subsidiary, but there have been more than 25 cases that have been filed by PASMAP since that time affirmatively asserting the jurisdiction of the PLRB. In fact, as these proceedings were going on in front of the NLRB, there was a case pending and PASMAP did not withdraw it. It allowed the PLRB to continue to have that case to rule on an unfair labor practice at the same time it was saying to the NLRB, no, you're the one with jurisdiction. There's no concurrent jurisdiction here. If the NLRB has jurisdiction, the PLRB does not. But this is the exact kind of gamesmanship that the judicial estoppel is intended to prevent. And... Does the record show us the status of the other ten bargaining units as far as being under Pennsylvania or under the NLRB? There's a stipulation that they've all proceeded wholly under Pennsylvania law. There has... The board has not exercised jurisdiction over the others, and in fact, in one of the board exhibits where there was a stipulation, the first stipulation, and I can get that when I come back for a rebuttal, what that is, I just don't remember the exhibit, the page numbers off the top of my head, but there was that all of that has proceeded under state law. That was not in dispute. And in fact, the record here is largely through stipulation. All right. So I just want to make sure, this bargaining unit, which has the two added classifications, is the only one operating under the NLRB now? Correct. All right. I mean, in the sense that that's our position, the NLRB has not exercised jurisdiction over any of the others. It hasn't been brought before the NLRB. I mean, the parties proceed in the normal course of labor relations and continue to do so. I want to then briefly, given the limited time, touch on this issue of the abuse of discretion. In the decision on the review, the board relied on management training and said management training basically means that we don't exercise our discretion. If you're an employer under 2-2 of the Act, we will exercise jurisdiction over you. That's not really, we're not asking this court to rule on whether that's appropriate. We are instead saying this is a very unique case. There is no case that's been cited by either party that involves this situation. The management training and a lot of the other cases involve contractors to exempt entities. This is not a contractor. Temple Health System is a wholly owned subsidiary, which is heavily controlled by the university. The university appoints all of the board members of the health system and removes them. The CEO of the health system is employed by the university, as are the key management employees. The physicians who provide the care at the health system are employed. There's consolidated financial statements. The Temple employees do maintenance for the hospital. Temple police respond to emergencies at the hospital. Temple manages the computer networks, the insurance policies. In these circumstances, trying to separate the health system from the university and treat them the way you would treat a contractor, as was the management training, we believe was arbitrary and prejudicial because it has upended all of these years of labor relations. I'm going to reserve my remainder. I have a decision tree question for you. You raised four basic arguments. Correct. Judicial estoppel, political subdivision, disabuse of discretion, and comedy. Those are the four issues. Is there one issue that is dispositive, that would resolve the case, that would require a void having to decide anything else? Do we have to decide every issue? No, judicial estoppel would result in the dismissal of the petition, which would... Without the need to decide anything else. As would the discretionary issue. What about the comedy? The comedy would as well. In fact, any of them independently would result in the resolution of it, because either the board can't process this petition, or the board can't exercise jurisdiction if you're not an employer under 2-2 or in the abuse of discretion. Thank you. Good morning. Good morning. May it please the court. Kelly Isbell here on behalf of the National Labor Relations Board. Jonathan Walter, Counsel for the Union, will be sharing three minutes of my time. The issue in this case is whether or not the hospital is a political subdivision and therefore exempt from coverage of the National Labor Relations Act. The board examined the Hawkins County factors and found that the individuals who administer the hospital are not subject to control by public officials or the general electorate. And in answering that question, the board looked at the pertinent question defined by this court, which is whether or not a majority of the board is subject to appointment or removal by public officials. And the answer to that question for the hospital would be the same, would it not, for the university? No, well, yes, the answer is the same, which is that a majority of the board members are not subject to appointment or removal by public officials. The university has a... And how does the board treat or classify the university as public or not? That's an interesting question. In 1972, the board discretionarily declined jurisdiction over the university. Because of its public nature. Because of its unique quasi-public nature with the Commonwealth. But in that proceeding, the Commonwealth admitted it was an employer under 2-2. So it conceded it was not exempt, but asked the board to discretionarily decline, which it did. So the board has never found that the university itself is an exempt institution. Does that answer your question? Well, it actually confuses me. Uh-oh, okay. So, the board hasn't found that the university is an exempt institution, but it accepted the Commonwealth's representation to that effect? Well, it accepted the evidence before it in 1972 about the amount of control. So the Commonwealth audits the financial... Okay. There is... In this proceeding, the facts about the university were not really contested. So they are whatever they were in the previous time? Yes, Your Honor. Okay. So, if the hospital is operationally integrated with the university, then is it not also a public entity? Are we asking hypotheticals or are we asking about this record? Because on this record, the university has no control over the day-to-day labor relations of the hospital. It is not involved in collective bargaining. The university board does not approve collective bargaining agreements, does not set wages. So, under the board's analysis, there is no control over labor relations by the university of the hospital. So, even if the hospital is exempt, let's assume it is, that doesn't get you to an exemption for the hospital because there is no... The hospital has its own control over labor relations. It sets its own contracts. It hires and fires on its own. The board of the hospital is removable by the officials of the university? Is that correct? By the board of the university? No, Your Honor. The hospital's board is appointed and may be removed by the health system's board. Well, that's an intermediary. It's an intermediary. The health system's board is subject to appointment and removal by the university's board. So, ultimately, it's the university, is it not, that could remove someone from the board of the hospital through the intermediary? Through the intermediary. Remembering that, I mean, that is pretty attenuated and that's the kind of attenuation the board found did not create an exempt political subdivision in Children's Hospital with the University of Pittsburgh, which has a very similar... It's also a state-related university in Pennsylvania. But the university, remember, has 36, if I remember correctly, 36 trustees and only 12 of those are appointed by a government official. So, a majority of the university's board is not appointed by a political official, public official. No member of the hospital's board is appointed by a public official. So, when you're talking about the kind of public... By whom are they appointed? They're appointed by the health system, but not by a public official. Okay. So, when you're talking about the kind of public accountability that would make you  I'm sorry. Do you stand on the board's rationale for not applying judicial estoppel? That is to say that the burden or detriment involved in this case would not be comparable to what it was in New Hampshire versus Maine? Well, I mean, the board's point about judicial estoppel is... I mean, the hospital is very careful to say it is not trying to estop the board. But the effect of applying estoppel against the union is that the board cannot exercise its exclusive jurisdiction over this hospital. Well, I'm not sure about that, but it couldn't entertain the petition in any event. But the board, unless the hospital is a political subdivision and is taken out of the coverage of the act, the board has exclusive jurisdiction. That's not responsive to the question of the rationale given by the board. And the board found that, yes, the union took different views. Conflicting positions, right. Right. But there is no indication that the union's position created the perception that either the PLRB or the NLRB was misled. I mean, the board did decline jurisdiction over the university in 1972. It has not come back to the board until now. There is really no reason for the parties to even think about who had jurisdiction. That was not the board's rationale. That was, the board accepted the rationale of the hearing officer. The hearing officer went through the three... And I thought it was the third one where the hearing officer found New Hampshire versus Maine inapplicable. Well, let's see, the third one. I'm going through... That's the unfairness or detriment. The unfairness. She went through all three, or he or she went through all three. And the last one, there is no undue advantage or disadvantage. The hospital put forward some changes, the differences between the state law and the federal law that would change. But that's not the kind of disadvantage. What is the kind in New Hampshire versus Maine? I couldn't find anything in that case other than the change of position and the different result that would obtain. Well, the result that would obtain in that case, of course, was that New Hampshire would suddenly get all these development rights and take the money away from Maine. Well, the border would move. But that was inherent in the inconsistent position. In other words, it didn't add anything. In fact, the court never went back to the third factor and said, here's the unfair detriment. They just said, here are three factors. They're not exclusive. They're exhaustive. Here's the first one. Here's the second one. Conclusion. With the analysis, it was clear to me on reading it that New Hampshire was going to gain a lot if they changed it, right? Because of the new development rights. I mean, that was clear from the decision. They were going to gain something. That's why they did it. Right. That's why they wanted to do it. And here the union would gain something as well. Presumably. They wouldn't pursue it. Presumably. They will also lose. I mean, as Debrisa pointed out, now they have the required 10-day notice before the strikes. Now this can be implemented. Whatever it is, they've struck the balance. Clearly, they've struck the balance in favor of federal jurisdiction. Right. But whether or not... The board, when it's deciding to exercise its jurisdiction, either the exclusive jurisdiction or discretionary jurisdiction, does not go through and decide which statutory scheme is going to work out better for one side or the other. I mean, if we... It doesn't need to. The petition has resolved that point. The fact that there's a petition there, clearly the union thinks it's better off under national jurisdiction. The question is what the board said about the third factor seemed to me incoherent. Incoherent. That's not right. Not incoherent. Unexplained. Okay. This is not the kind of detriment that was an issue in New Hampshire v. Maine. Right. What kind of detriment is required as far as the board is concerned? Well, of course... Or unfair burden. There are two terms. Right. The board didn't give us an example, but trying to decide over the years whether or not one party... I'm sorry. Go on. One party is going to be advantaged by the state or federal law is not it. I mean, I can... That's inherent in the situation. That's inherent, exactly. That can't be a factor. That's the nature of the situation. I could perhaps come up with hypotheticals. But the board didn't. But the board didn't, and... So we have a conclusion. This is not the kind of burden or detriment, whatever it is, but no reason given. That's the whole of the explanation for not asserting or even deciding whether to assert judicial establishment, but for saying this isn't such a situation. Right. And I can't find any case where the board has applied judicial establishment against a party. Well, that may explain its unfamiliarity with the analysis. I was certainly unfamiliar with the analysis before I started reading this case. That leads me to ask you the same antecedent I asked the Councilman Petitioner, which is does the board consider principles of judicial establishment to operate at all? You said earlier, I think you said in response to a question, it's up to the board to decide its jurisdiction over what... It doesn't make any difference what position the parties take at earlier dates. It's up to the board to make that decision, right? I think that's right, Your Honor. Okay, then why doesn't the board say that? The board didn't say that in this opinion. It seems to have embraced principles of judicial establishment. In other words, it seems to have accepted the notion that there are circumstances under which a party could be estopped, judicially estopped in a board proceeding. And in a board proceeding, the board might do it. So if you read the hearing officers... Might do what? Well, it might apply... I can imagine a situation where the board would apply something like judicial estoppel because if you've read the cases, the board sometimes refers to judicial estoppel... Yeah, it gets it all mixed up. It gets them mixed up. Yeah, the board needs to get this straightened out. I assume you'll help them do that, right? I will try, Your Honor. But I still don't understand. Has the board... In fact, in this opinion, the board said, assuming principles of judicial estoppel apply. Right. So, I mean, it's never decided that question, right? I'm sorry? It's never resolved that issue. No, Your Honor. I can't find a case where it has clearly applied the principles of judicial estoppel. I found cases where it uses the word judicial estoppel and then gives the analysis of collateral estoppel. Right. But it's not something that comes before the board very often. And I can't imagine the board applying these principles against parties that have taken alternate views before the board. But this is a case where the board was not involved before. There's no reason to believe the PLRB was misled or the NLRB was misled. And... Well, if the... I'm sorry. Whether the initial representation is to the board or to some other body. Mm-hmm. If it doesn't come before the board and say the exact opposite, it sets up the premise for the predicate for asking about estoppel. It does. It doesn't have to have been a representation to the board. It's... Here it's forum shopping, so obviously it's a different forum. I mean, that's the concern. It's a different forum. And these matters then come into the courts, as they have here, right? So the court is faced with the same embarrassment as was possible in New Hampshire v. Maine of adjudicating a matter on a premise that was denied by the same party at an earlier time and place, at a different place. I don't know of any case that says the board must give up its jurisdiction over parties that are clearly under the National Labor Relations Act because of the position. There isn't one, but there needn't be one for the board to say there's a question here of judicial estoppel or administrative, if you will, and we need to resolve that before we go on. And they may resolve it by saying we're not going to apply the estoppel for whatever reason. The one reason you've suggested, I think, in your brief, was that it would frustrate policies of the Act, right? Yes. I didn't see that because regardless of the outcome on this judicial estoppel question, there will be collective bargaining. Employees will have chosen to have the representative of their choice. Those are the policies of the Act. So I don't see what is being frustrated or what could be frustrated. Literally, the board's exercise of its jurisdiction. But that's just a self-aggrandizement. That's not a policy of the Act. Well, I want to talk a little bit about forum shopping, if I may. Because I don't see this as a forum shopping case. What happened at WeTransport was that within the 12-month election bar, two competing petitions were filed. And the board put off deciding. I mean, the board clearly had jurisdiction over WeTransport. But the board did not process an election petition because it was an election bar. The first election petition went under state jurisdiction. The board had jurisdiction but because of the election bar said, we're not going to process it. But this is not that kind of case. The proceedings are not close together. There was a 2006 proceeding and now there's a 2018-19 proceeding. It is not the kind of forum shopping that we saw in WeTransport where the two petitions were filed within the same year before two different bodies. And we have had changes. So, 1995, the hospital and the university split. Nothing came before the board until now but there were changes between the time the board declined jurisdiction over the university and now that make the board asserting jurisdiction make sense. Why didn't it assert its jurisdiction in 2006 when the incumbent union, as I understand it, said, well, we think we're under NLRB jurisdiction if there's going to be this split between Temple University and the hospital? Because no one ever filed a petition with the board. The incumbent union made that argument to the state labor board but no one filed a petition with the national labor board. And what about the fact that today, as I understand it, 10 of the 11 bargaining units are still under Pennsylvania's jurisdiction? Well, if we're talking about the hospital so we're not talking about anybody else but just the hospital once the board asserts jurisdiction over the hospital the board didn't put this this was not a question that was before the board but if the board has jurisdiction over the hospital then any one handling 10 of them and the other handling one. Does it ever persist unless somebody files a petition? Well, there would be no unless somebody files a petition or a ULP charge in large units I suspect it won't be that long before someone does and that would come to the board. I want to ask you about the comedy issue and specifically if you could explain to me how the board distinguished this Summers living case the board distinguished this in footnote seven I think could you explain to me what the board is saying there? I will give it my best. Summers living is a very different case in that case the board had previously declined jurisdiction over the employers under res care which was a previous case about discretionary jurisdiction the employers were joint employers with the county mental health department that was stipulated joint employers when the unions filed new election petitions they filed them with the state the employers including the county notified the unions and the state labor board that the board's management training decision had come out and the board now had jurisdiction over these employers the state labor board evidently did not agree and continued to process the election petitions the employers appealed it all the way to the state courts and the state courts said state does not have jurisdiction during this process the employers never consented to the elections they never bargained with the unions they continued to assert that the national labor relations board had jurisdiction and that's what's different there was a change in intervening board law the state courts notified the employers that the national board had jurisdiction and the employers never bargained under state law that's what makes this very different but what about the employers argument here that the question of whether the board has jurisdiction or not it either does or doesn't it can't turn on whether whether the employer voluntarily continued to negotiate or never does and Summers says as I read it that in that circumstance the state board did not have jurisdiction so therefore the board did so why is that different from this case does it turn on the fact that there was a state court decision when the board distinguished in Summers Living it relied on the fact that there was both a change in board law and a state court decision informing the parties that the state did not have jurisdiction if you go back to even in Summers Living when the board is setting out its principles for granting comedy it relies on the same three things did the election reflect the true desires of the employees was it free from election irregularities and did it comport with substantial due process there's nothing in there about the date of state election at the time it held an election and certified the unit nevertheless the board did not look at that it said we would grant comedy except professionals didn't get their own vote the same is true in West Indian and We Transport neither of those cases the state have jurisdiction the issue is whether or not the election procedures comported with board law so the difference with Summers Living here is yes the state did not have jurisdiction but there were these intervening cases that told everyone the state did not have jurisdiction was it management training that worked the change management training was the case where the board expanded its discretionary jurisdiction so before management training the board looked through all these factors about control to decide whether or not when was management training 1995 which was the same year as the reorganization I think yes so why isn't the board maybe the board is I'm not sure asserting that it's had jurisdiction since 1995 the board very possibly has had jurisdiction since 1995 what I don't know is we do know that was never presented to the board so nobody asked the board between 1995 and today to take jurisdiction but we also don't know how things changed now ok yes exactly right but now the union is asking that and the employer is resisting that yes or at least the comedy aspect here and there is no indication that the so if we assume Temple is exempt the first and as the board said there is no indication or evidence or even contention that the 2006 unit is different  1975 unit right so the original certification is the same certification as 2006 what's changed is the bargaining representative there's been the 1975 unit and the 2006 unit were the same and if you look at the NISI certification of 2006 it says we're certifying the same unit that was previously certified so they're the same unit there's no indication that those units are inappropriate the hospital has conceded that the unit is appropriate for bargaining and the new employees to be added by election not by accretion are also appropriately added to the unit there's no indication that this is in any way an inappropriate unit or should not have been certified by the national labor relations board right I think judge are there any further  thank you Mr. Walters may it please the court Jonathan Walters on behalf of the Temple Allied Professionals which I will refer to as union I wanted to answer two questions raised by Judge Henderson I believe which is one has to do with how come no one to the national labor relations board in 2006 when the incumbent union took the position there was national board jurisdiction no party did the incumbent union could have done so by filing what's called a general box petition saying we want to reaffirm our majority status with a national board order because under general box any incumbent bargaining representative has the right any recognized representative has the right to come in and say I want a national board certification for whatever reason I have no idea why it elected not to the other question point you raised judge Henderson was the question of this well who's regulating the bargaining and relationships at the hospital do you have two agencies and the answer is no given the board's decision in 2017 the PLR Pennsylvania labor relations board is by statute barred from asserting jurisdiction over any employer and labor organization any employer covered by the national labor relations act so there's only at this point for purposes of both the Pennsylvania labor relations board and the national labor relations board all bargaining relationships are governed by the national labor relations act with regard to the question of wait a minute I thought we just recounted from the statute was basically that it has to be one or the other right so now you're saying therefore it's the national board the national board by virtue of the decision in this case the national board has jurisdiction over the union's position where I think judicial estoppel or administrative estoppel would apply is by example after this case went before the court three months ago the companion PASMAP the overall union of nurses was the subject of an unfair labor practice charge filed by someone under a dairy leaf theory superseniority the case got withdrawn if a complaint had been issued I recognize this as hypothetical where was it filed? I'm sorry the unfair labor practice charge in region four in Philadelphia with the national labor agency saying it's essentially what's called a dairy leaf case superseniority if a complaint is issued and the union showed up and said wait a minute you don't have jurisdiction this is a public employee relationship I think appropriately the board would say you can't say that in fact were we to answer a complaint and deny jurisdiction on those grounds the NLRB council for general council would take the position and strike our answer because that is totally inconsistent the case that was pending that was referenced by council for the hospital was a case that was filed in 2014 involving parenthetically a nurse who was trying to transfer from Jeans Hospital which has the identical legal structure as Temple University Hospital but which Temple University Health Systems has agreed is covered by the National Labor Relations Act I just want to make sure I get the significance is it the passage of time or the non-overlap in the proceedings well what happened was the charge that was filed with the PLRB predated this petition so what's the difference between your hypothetical and this case this case has to do with a determination as to who's going to regulate the rights of the employees that's true in your hypothetical isn't it well in the hypothetical it would be the union would be taking a contradictory position from the position asserted here with regard to the charge against us on the question of taking contradictory positions before this court as opposed to before the board is that the distinction no what I'm saying is that the union cannot be in a position before an administrative agency at the same time taking contradictory positions okay so that's what I was getting at 2014 2014 it's not the passage of time it's that they weren't simultaneously open they weren't simultaneously at the time that the Pennsylvania Labor Relations Board case proceeded although the union had made the assertion there was no final order there was no final order by the NLRB had the NLRB come down with an order prior to and this is the timing didn't work out like this but had the NLRB come down with an order prior to the PLRB's determination we would have been obliged yes to withdraw that charge on the grounds that yeah we filed it but you know what PLRB you don't have jurisdiction anymore why would it be the board's order why wouldn't it be the union's petition because wait when is the union's petition filed in this case with the national board late 2015 15 November I think we had to refile it November December 2015 and was the 2014 case withdrawn from the PLRB it was not because we didn't know how if assuming arguendo that the NLRB had declined jurisdiction alright that would have given that would have made clear that the PLRB did have jurisdiction and we would have had to attempt to affirm the board upheld that finding the PLRB I'm sorry the Pennsylvania labor relations board in 2016 before the NLRB issued its final ruling but after this petition was filed the union was defending an unfair labor practice charge in Pennsylvania prosecuted at the same time that it was petitioning here petitioning the national board it prosecuted the case before it filed the petition but it did not withdraw the charge that it was prosecuting because at that time there was no final order there was no final order so the matter was pending their position in that pending proceeding was that the PLRB had jurisdiction or at least they didn't contest the jurisdiction and while that's over there they come to the national board and say you have exclusive jurisdiction correct so there's simultaneity well except that it's it's the position but  we had to protect the rights of the individual on behalf of whom we had filed the charge before the PLRB you could have objected that there was no jurisdiction that would have protected the rights we wouldn't have the 10B period which is six months in run I'd like to make one last point on the question of discretionary jurisdiction well that's going to be your next last point I have a question just that as emphasized by counsel for the board this was not a determination that Temple University the 1972 decision was a statutory statutory exempt under section 2.2 it was discretionary based with the involvement of the commonwealth with the university and those were quite frankly the days when the board's position was a bit more fact specific and opaque best summarized by the way in this court's decision human development association in Judd I find it very useful to invite the court's attention to its wise words there but there is also in that case your honor went through a long summary including an appendix of how the board was deciding rest care and long stretch management training changed that in 1995 the Temple case was decided at a time when there was this analysis of the engagement of the otherwise nonprofit or private employer with the state but it seems to me this is no more my analogy would be if Churchill Downs which is runs races in Texas riding equipment I think the board would assert jurisdiction over those operations albeit it continues to decline jurisdiction over horse racing decline over dog racing too that would be declined jurisdiction over Churchill Downs would be on what does not effectuate the purposes of the act or really have any impact in interstate commerce and it has consistently declined jurisdiction over horse tracks and dog tracks it was a lack of effect on interstate commerce it doesn't effectuate the purposes of the act I think is the magic phrase right on judge can you what's your best understanding of the basis on which the board distinguished Summers I think it was I'm not trying to avoid it I think it was stated by counsel for the board I would like to hear you state it my view the unions view is that at all times there was a dispute going on and the employers consistently challenged that jurisdictional issue whereas here the employer was perfectly willing in 2005 or 6 to stipulate went into an election agreement and not only did it abide by the results but it proceeded to negotiate through separate collective bargaining agreements reverse judicial estoppel one could say that yes anyway nobody else has any more questions thank you very much does Ms. Homer have any time left why don't you take a minute anyway thank you briefly when the board yesterday decided to decline jurisdiction over Temple University in 1972 it's important here that Temple University Hospital was part of that it still is this distinction that's been made by the attorney for the board and for the union between the health system and the hospital is completely irrelevant here in terms of that discussion about the structure because the parties agreed that the health system and the hospital are considered interchangeable and in fact the stipulations make clear the health system controls labor relations for the hospital so for purposes of who is really the bargaining agent in this case which are part of the board exhibits there were stipulations it talks about the detailing of all of that all of that is detailed it's at the health system level all of the employment policies are at the health system level so that that would be because the temple university can remove the board of the health system it is the health system that controls the control over only 12 of the 36 no your honor that is not correct the university controls all of the directors of the health system but the question is how many members of the temple board are appointed by the state the commonwealth so there are 12 commonwealth trustees out of the majority of the temple board although it has the I mean that is a quorum for purposes of the board your honor but I'm focusing on the discretion issue and the discretionary jurisdiction we believe that it is to separate out the hospitals and the health system from the university is a false distinction that is not consistent with the other cases here this is a unique case this is not management training that is not these other cases where we're talking about in 2014 in 2015 with the PLRB in 2015 it files this petition with the NLRB there's a decision by the region directing the election early in 2016 that the ULP is still pending in front of the PLRB for nearly all of 2016 that decision doesn't come down until November of 2016 just a few weeks before the board issues its decision granting review so it is clear it is a clear case we're talking about 10 months of trying to have your cake and eat it too which is exactly the purpose of judicial estoppel I know there were questions raised about summer's living system we believe that the attempts to distinguish it on this is a unique case both in the factual relationship between temple health system and temple university but also in the reasons that it brought us here today and we believe that the Indiana versus  is a relevant factor here thank you stand please
judges: Henderson, Tatel, Ginsburg